IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JOHN THOMPSON,** | : | CIVIL ACTION NO. 1:13-CV-2885 |
| Plaintiff | : | (Chief Judge Conner) |
| v. | : | |
| **JAMES M. ARMBRUSTER** and **BOROUGH OF PENBROOK,** | : | |
| Defendants | : | |

## MEMORANDUM

Plaintiff Dr. John Thompson ("Dr. Thompson") filed the above-captioned civil rights action pursuant to 42 U.S.C. § 1983 against defendants James M. Armbruster ("Armbruster") and the Borough of Penbrook ("Penbrook") for alleged violations of Dr. Thompson's rights under the Fourth and Fourteenth Amendments to the U.S. Constitution. Presently before the court is defendants' motion (Doc. 31) for summary judgment. For the reasons that follow, the court will grant the motion.

### I.  Factual Background and Procedural History[1]

At all times relevant to this action until July 27, 2011, Dr. Thompson operated a commercial dental practice at 2517 Walnut Street in Penbrook, Pennsylvania

---

[1] In accordance with the standard of review for a motion for summary judgment, the court will present the facts in the light most favorable to Dr. Thompson, the non-moving party. See *infra* Part II. The court notes, however, that Dr. Thompson's counsel failed to file any response to defendants' motion. By order dated November 13, 2014, the court explicitly ordered Dr. Thompson's counsel to file such a response. (Doc. 34). Local Rule 56.1 provides that the moving party's statement of facts will be deemed "admitted unless controverted" by the opposing party. L.R. 56.1. Accordingly, the facts set forth in defendants' Local Rule 56.1 statement are deemed admitted.

("the property"). (Doc. 33 ¶ 1). Dr. Thompson's practice was located on the first floor of a two-story duplex building. (Id. ¶ 2). On July 13, 2011, Light-Heigel & Associates, Inc. ("Light-Heigel & Associates") inspected the property. (Id. ¶ 6). The inspection report, which indicated that the inspection was conducted for "Buyer Notification," identified a number of safety issues in the basement and on the second floor of the property. (Id. ¶¶ 6-7; Doc. 33-2, Ex. B). In the basement, Light-Heigel & Associates found, *inter alia*, that certain framing members had been damaged by wood-destroying insects and that the basement stairs had collapsed from insect damage. (Doc. 33-2, Ex. B). Light-Heigel & Associates had no access to the first floor of the property during the July 13th inspection. (Doc. 33 ¶ 7). The inspection report was submitted to defendant Armbruster, who at all relevant times served as the Borough Manager and Building Codes Official of defendant Penbrook. (Id. ¶ 3; Doc. 33-2, Ex. B).

On July 13, 2011, Armbruster sent a letter to the estate of John R. Thompson, Sr.—the owner of the property at that time—noting that a partial inspection of the property had been conducted, identifying numerous code violations in the basement and on the second floor, and instructing the property owner to correct the identified violations and to apply for a new inspection within ninety days. (Doc. 33 ¶¶ 8-12). On July 19, 2011, Armbruster sent an unsafe building notice to PA Deals LLC ("PA Deals")—the new owner of the property—noting that the property had been partially inspected and that the limited inspection revealed multiple code violations. (Id. ¶¶ 13-15).

On July 25, 2011, Armbruster applied for a warrant to search the first floor of the property "to determine if the building is safe enough to be occupied and used as a medical office." (Id. ¶ 17; Doc. 33-5, Ex. E). In his affidavit of probable cause, Armbruster averred that PA Deals had requested an inspection of the property as required by local ordinance but that Dr. Thompson prevented the inspectors from accessing the first floor on July 13, 2011. (Doc. 33 ¶ 18). Armbruster noted that the July 13th inspection had revealed over forty code violations and opined that structural defects in the lower floors of the property affected the conditions of the upper floors. (Id. ¶¶ 19, 21). Armbruster further explained that, according to PA Deals, "the occupant of the building predates the owner's title to the building and . . . there is no written lease between the parties." (Id. ¶ 22). On July 26, 2011, a Dauphin County magisterial district judge authorized the search warrant. (Id. ¶ 23).

Armbruster and two law enforcement officers searched the first floor of the property on July 27, 2011. (Id. ¶ 24). After identifying code violations on the first floor, defendants attached a placard to the door of the building that declared the property an "unsafe building" pursuant to 34 PA. CODE § 403.84(a) and "unfit for human habitation." (Id. ¶¶ 26-27). On August 5, 2011, Light-Heigel & Associates inspected the first floor of the property. (Id. ¶ 28). Among other issues, Light-Heigel & Associates found ceiling and wall damage and certain electrical defects. (Doc. 33-9, Ex. I). Armbruster sent a letter to PA Deals on October 31, 2011 regarding the code violations on the first floor and instructed PA Deals to remedy the violations within thirty days. (Doc. 33 ¶ 30).

Light-Heigel & Associates reinspected the property on November 12, 2013 and identified additional issues. (See id. ¶ 33). Armbruster informed PA Deals of the additional violations by letter the following day. (Id. ¶ 34). On November 25, 2013, Light-Heigel & Associates reinspected the property and found that all identified issues had been addressed. (See id. ¶ 36). Defendants issued a certificate of occupancy for the residential unit at the property that same day. (Doc. 33-17, Ex. Q).

Dr. Thompson filed the instant suit against defendants in the Dauphin County Court of Common Pleas on November 7, 2013. (Doc. 1). Defendants removed the action to this court on November 26, 2013. (Id.) On December 20, 2013, defendants moved to dismiss this action for failure to state a claim on which relief may be granted. (Doc. 5). On May 12, 2014, after securing new counsel and obtaining leave of court, Dr. Thompson filed an amended complaint, alleging that defendants violated his Fourth and Fourteenth Amendments rights. (Doc. 23). By order dated July 1, 2014, the court set a fact discovery deadline of September 15, 2014. (Doc. 30). According to defendants, Dr. Thompson failed to provide the disclosures required by Federal Rule of Civil Procedure 26, failed to conduct any discovery, and failed to respond to defendants' discovery requests. (Doc. 33 ¶ 4 & n.1). With the exception of certain documents related to the search warrant application and entries to the property that Dr. Thompson attached as an exhibit to the amended complaint, the evidence of record consists exclusively of documents that defendants produced pursuant to Rule 26, as well as defendants' Local Rule 56.1 statement.

Defendants filed the instant motion for summary judgment on October 15, 2014. (Doc. 31). They argue that summary judgment is warranted because Dr. Thompson has not submitted any evidence in support of his claims and because the limited record evidence establishes that Dr. Thompson's claims lack merit. (Doc. 32 at 1-2). Dr. Thompson failed to oppose the motion. By order dated November 13, 2014 (Doc. 34), the court alerted Dr. Thompson to Local Rule 7.6, which provides that a party who fails to file a brief in opposition to a motion "shall be deemed not to oppose such motion." L.R. 7.6. The court also directed Dr. Thompson to file a brief in opposition the motion by November 20, 2014. (Doc. 34). Dr. Thompson did not file any brief in compliance with this new deadline. Accordingly, the motion is deemed unopposed and is ripe for disposition. See FED. R. CIV. P. 56(e); L.R. 7.6; see also Blasi v. Attorney Gen., 30 F. Supp. 2d 481, 484 (M.D. Pa. 1998) ("[T]he district court may not grant a motion for summary judgment . . . solely because the motion is unopposed; such motions are subject to review for merit."). The court will proceed to review the merits of defendants' motion.

## II.   Legal Standard

Under Federal Rule of Civil Procedure 56, summary judgment is appropriate when "there is no genuine dispute as to any material fact" and a jury trial would be an empty and unnecessary formality. FED. R. CIV. P. 56(a). A factual dispute is "material" if it might affect the outcome of the action under applicable law, and is "genuine" only if there is a sufficient evidentiary basis that would allow a reasonable factfinder to return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986). The burden of proof is on the non-

moving party to come forth with "affirmative evidence, beyond the allegations of the pleadings," in support of its right to relief.  Pappas v. City of Lebanon, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  "Such affirmative evidence—regardless of whether it is direct or circumstantial—must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance."  Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001) (quoting Williams v. Borough of W. Chester, 891 F.2d 458, 460-61 (3d Cir. 1989)). This evidence must be adequate, as a matter of law, to sustain a judgment in favor of the non-moving party on the claims.  See Anderson, 477 U.S. at 250-57; Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986); see also FED. R. CIV. P. 56(a), (c), (e).  Only if this threshold is met may the cause of action proceed.  Pappas, 331 F. Supp. 2d at 315.

### III.   Discussion

Dr. Thompson brings claims under 42 U.S.C. § 1983 against Armbruster for unlawful search and seizure of Dr. Thompson's property in violation of the Fourth and Fourteenth Amendments; against Armbruster for violation of Dr. Thompson's substantive due process rights under the Fourteenth Amendment; against Penbrook for violations of Dr. Thompson's Fourth and Fourteenth Amendment rights; and against Armbruster for punitive damages.  (Doc. 23).  Section 1983 provides, in relevant part, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws,

shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. Section 1983 does not create any substantive rights, but rather offers private citizens a means to redress violations of the Constitution or other federal laws. Estate of Smith v. Marasco, 318 F.3d 497, 505 (3d Cir. 2003). The court must therefore determine whether Dr. Thompson has sufficiently demonstrated any deprivations of his Fourth or Fourteenth Amendment rights by a person acting under color of state law. See Good v. Borough of Steelton, No. 1:06-CV-1736, 2008 WL 4454058, at *4 (M.D. Pa. Sept. 30, 2008) (quoting Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996)). The court will address Dr. Thompson's § 1983 claims *seriatim*.

### A. Armbruster's Alleged Violation of Dr. Thompson's Fourth Amendment Rights

The Fourth Amendment, made applicable to the states through the Due Process Clause of the Fourteenth Amendment, protects against unreasonable searches and seizures. Gariffo Real Estate Holdings Co. v. City of Philadelphia, No. 05-6153, 2007 WL 1410607, at *4 (E.D. Pa. May 11, 2007).[2] The "ultimate touchstone" of the Fourth Amendment is "reasonableness." Brigham City, Utah v. Stuart, 547 U.S. 398, 398 (2006). A party asserting a violation of the Fourth Amendment bears the burden of establishing a "reasonable expectation of privacy" in the place

---

[2] The Fourth Amendment provides as follows:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. CONST. amend. IV.

searched or the object seized. See United States v. Burnett, 773 F.3d 122, 131 (3d Cir. 2014) (citing Minnesota v. Olson, 495 U.S. 91, 95-97 (1990)). To establish a reasonable expectation of privacy in searched premises, the challenging party must demonstrate both a subjective expectation of privacy in the premises and that this expectation was objectively reasonable. Id. (citing Rakas v. Illinois, 439 U.S. 128, 143-44 (1978)). Factors relevant to this analysis include whether the challenging party has a possessory interest in the searched premises, whether the party can exclude others from the premises, and whether the party took precautions to maintain his privacy. Warner v. McCunney, 259 F. App'x 476, 477 (3d Cir. 2008) (nonprecedential).

In Camara v. Municipal Court of City & County of San Francisco, 387 U.S. 523 (1967), the Supreme Court held that, in the absence of consent, administrative searches of buildings to inspect for municipal code violations generally require a warrant supported by probable cause. Id. at 538-40. However, the Court relaxed the probable cause standard in this context; probable cause to search exists when "reasonable legislative or administrative standards for conducting an area inspection are satisfied with respect to a particular dwelling." Id. at 538.

Dr. Thompson first alleges that Armbruster unlawfully entered and searched the property on July 13, 2011 without his consent or a warrant. (Doc. 23 ¶ 29). Yet Dr. Thompson has failed to submit any evidence that Armbruster searched the property on July 13th. (See Doc. 32 at 11-12). The limited record supports a finding only that Light-Heigel & Associates inspected the property that day. (Doc. 33 ¶ 6; Doc. 33-2, Ex. B). Moreover, the undisputed facts establish that Light-Heigel &

8

Associates inspected only the basement and second floor of the property. (Doc. 33 ¶ 7). Assuming *arguendo* that Light-Heigel & Associates acted under the direction of Armbruster during the July 13th inspection, see Boyer v. Mohring, 994 F. Supp. 2d 649, 657 (E.D. Pa. 2014) (identifying circumstances in which a private actor operates under color of state law), Dr. Thompson has not established an essential element of his Fourth Amendment claim: that he possessed a reasonable expectation of privacy in the basement of the property. The record is devoid of evidence that Dr. Thompson had a possessory interest in the basement or that he took any precautions to keep that area private. See Warner, 259 F. App'x at 477. The record makes clear that Dr. Thompson prohibited the inspectors from entering the first floor on July 13th but contains no indication that Dr. Thompson similarly refused access to the basement. (See Doc. 33 ¶¶ 7, 18).[3] Hence, a reasonable juror could not find that Armbruster violated Dr. Thompson's Fourth Amendment rights on July 13, 2011.

Dr. Thompson further alleges that Armbruster unlawfully entered and searched the first floor of the property on July 27, 2011 "without a valid search warrant supported by probable cause." (Doc. 23 ¶ 32 (emphasis omitted)). According to the amended complaint, Armbruster used illegally obtained evidence from the July 13th search to secure a warrant for the July 27th search. (Id. ¶ 30). This argument is unavailing at this juncture because Dr. Thompson has failed to show any Fourth Amendment infirmities with respect to the July 13th inspection.

---

[3] Dr. Thompson does not allege any possessory interest in the second floor of the property. (See Doc. 23 ¶ 8).

Moreover, Dr. Thompson has not demonstrated that the July 27th search was unlawful or unreasonable. He does not challenge Penbrook's administrative inspection procedures or provide any evidentiary support for his bald allegation that the search warrant was invalid. See Berckeley Inv. Grp., Ltd. v. Colkitt, 455 F.3d 195, 201 (3d Cir. 2006) ("[T]he non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument."). In connection with defendants' application for a search warrant, by contrast, Armbruster averred that PA Deals sought to have the property inspected, as required by Penbrook ordinance, and that numerous code violations in the basement and on the second floor created serious concerns about the condition of the first floor, which Armbruster believed was used by the public. (Doc. 33 ¶¶ 18-19, 21; Doc. 33-5, Ex. E). Municipalities such as Penbrook have a "strong interest" in ensuring that buildings do not pose a threat to the public. See Gariffo Real Estate Holdings Co., 2007 WL 1410607, at *5 (citing Camara, 387 U.S. at 537). In light of defendants' justifications for inspecting the first floor and the complete lack of contrary evidence from Dr. Thompson, the court finds as a matter of law that the July 27th search was reasonable and supported by probable cause.

To the extent that Dr. Thompson alleges that defendants' classification of the property as an unsafe building on July 27, 2011 constituted an unlawful seizure (see Doc. 23 at 11), this claim cannot withstand summary judgment. A "seizure" of property within the meaning of the Fourth Amendment occurs when "there is some meaningful interference with an individual's possessory interests in that property." Gariffo Real Estate Holdings Co., 2007 WL 1410607, at *4 (quoting Soldal v. Cook

County, Illinois, 506 U.S. 56, 61 (1992)).  A reasonableness standard governs whether a municipality's seizure of a building violates the Fourth Amendment.  Id. (citing Soldal, 506 U.S. at 62).  The party challenging an alleged seizure bears the burden of demonstrating that the seizure was unreasonable.  Verdier v. Borough, 796 F. Supp. 2d 606, 619 (E.D. Pa. 2011) (citing Brower v. County of Inyo, 489 U.S. 593, 599 (1989)).

   Assuming *arguendo* that defendants seized Dr. Thompson's property on July 27th when they declared the property an "unsafe building" pursuant to 34 PA. CODE § 403.84(a) (see Doc. 33 ¶ 26), Dr. Thompson still has not met his burden here.  As the Supreme Court noted in Camara, "the public interest demands that all dangerous conditions be prevented or abated."  387 U.S. at 537; see also Gardner v. McGroarty, 68 F. App'x 307, 312 (3d Cir. 2003) (nonprecedential) ("Where a building is seized because of the danger it poses and adequate recourse is provided to challenge any action taken by the local government, the seizure does not violate the Fourth Amendment.").  Defendants have pointed to undisputed evidence that the first floor contained multiple code violations that impacted the safety of the premises.  (See Doc. 33 ¶¶ 26-27, 29).  Dr. Thompson has not presented any evidence that the seizure of the property was arbitrary or inconsistent with applicable regulations or ordinances.  Cf. Para v. City of Scranton, No. 3:CV-06-2432, 2008 WL 2705538, at *16 (M.D. Pa. July 10, 2008) ("[I]f the action taken by the Defendants was taken in an emergency situation or their actions adhered to their own ordinances or procedures, their actions would not violate the Fourth Amendment.").  Accordingly,

a reasonable juror could not conclude from the record evidence that any seizure of the property on July 27th violated Dr. Thompson's Fourth Amendment rights.

### B. Armbruster's Alleged Violation of Dr. Thompson's Fourteenth Amendment Rights

The amended complaint alleges that Armbruster arbitrarily deprived Dr. Thompson of property in violation his substantive due process rights under the Fourteenth Amendment. (Doc. 23 ¶¶ 35-46).[4] To prevail on a substantive due process claim, a plaintiff must demonstrate both that the state deprived him of a fundamental interest protected by substantive due process principles and that the state's deprivation of that interest was arbitrary, irrational, or so egregious that it "shocks the conscience." Chainey v. Street, 523 F.3d 200, 219 (3d Cir. 2008); Nicholas v. Pa. State Univ., 227 F.3d 133, 139 (3d Cir. 2000). The use and enjoyment of property is a fundamental interest protected by substantive due process principles. Good, 2008 WL 4454058, at *10 (citing Pellegrino Food Prods. Co. v. City of Warren, 116 F. App'x 346, 347 (3d Cir. 2004) (nonprecedential)).

Assuming *arguendo* that Dr. Thompson's operation of his dental practice at the property represents a fundamental property interest, Dr. Thompson has failed to demonstrate that any deprivation of that interest by Armbruster rises to the level of a substantive due process violation. Indeed, Dr. Thompson has not offered any evidence to support his claims that Armbruster acted arbitrarily in searching the property, declaring it unsafe, or preventing Dr. Thompson from accessing it. See

---

[4] The Fourteenth Amendment provides in relevant part that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. CONST. amend. XIV.

Barshinger v. Buffington, No. 1:03-CV-0506, 2004 WL 3607974, at *9 (M.D. Pa. June 10, 2004) (granting defendants' motion for summary judgment as to plaintiffs' substantive due process claims for unlawful seizure and improper prosecution in part because plaintiffs failed to offer sufficient evidence to establish that state officials acted without probable cause or with malice), aff'd, 131 F. App'x 783 (3d Cir. 2005).  The undisputed facts confirm that Light-Heigel & Associates and Armbruster found multiple code violations in the property on July 13th and July 27th, respectively, which caused defendants to declare the property unsafe and unfit for human habitation.  (Doc. 33 ¶¶ 6, 9-10, 26-27).  In the absence of any contrary record evidence, the court concludes as a matter of law that Armbruster's conduct was not sufficiently arbitrary, irrational, or shocking to constitute a substantive due process violation.  See Grimm v. Sweeney, 249 F. Supp. 2d 571, 610, 615 (E.D. Pa. 2003) (finding that the condemnation of one structure damaged during a fire and the basement of another structure in which inspectors found numerous

code violations and safety issues did not shock the conscience).[5]  Given that no genuine issues of material fact exist, Armbruster is entitled to summary judgment on Dr. Thompson's constitutional claims under § 1983.[6]

### C. Penbrook's Alleged Violation of Dr. Thompson's Fourth and Fourteenth Amendment Rights

Local governments may be held liable under § 1983 "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the [constitutional] injury . . . ." Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978).  A plaintiff bears the burden of identifying a policy or custom of the municipality that caused the constitutional violation.  Hammond v. City of Wilkes-Barre, No. 3:09-2310, 2014 WL 2532486, at *5 (M.D. Pa. June 5, 2014) (citing Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown, 520 U.S. 397, 403 (1997)).  A municipality is

---

[5] The court notes that a substantive due process claim is cognizable under § 1983 only when another constitutional provision does not provide a more explicit source of protection.  Barshinger, 2004 WL 3607974, at *9 (citing Albright v. Oliver, 510 U.S. 266, 273 (1994) (plurality opinion)).  In the case *sub judice*, Dr. Thompson's substantive due process claim is predicated on the same allegations of unlawful search and seizure that underlie his Fourth Amendment claim.  Dr. Thompson's due process claim therefore "fits squarely within the contours of the Fourth Amendment's protections."  El Malik v. City of Philadelphia, No. 06-1708, 2007 WL 984455, at *7 n.2 (E.D. Pa. Mar. 26, 2007).  For this additional reason, Dr. Thompson's claim cannot survive summary judgment.  See id. (reasoning that summary judgment on plaintiffs' substantive due process claim was appropriate, even if plaintiffs had offered evidence of conscience-shocking conduct, because that claim was "grounded" in the Fourth Amendment); cf. Gardner, 68 F. App'x at 312 ("Because the search and seizure of [plaintiff's] apartment building did not violate the Fourth Amendment, there is no substantive due process violation.").

[6] In light of the court's conclusions with respect to Dr. Thompson's constitutional claims against Armbruster, it need not consider whether Armbruster is otherwise entitled to qualified immunity.

subject to liability under § 1983 only to the extent that one of its officers violated a plaintiff's constitutional rights.  See Grazier ex rel. White v. City of Philadelphia, 328 F.3d 120, 124 (3d Cir. 2003) (quoting City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986) (per curiam)).

As the court explained *supra*, Dr. Thompson has not adduced any evidence to demonstrate that Armbruster violated his Fourth or Fourteenth Amendment rights.  Accordingly, the court must also dismiss Dr. Thompson's claims against Penbrook for municipal liability.  See id.[7]

## IV.   Conclusion

For all of the foregoing reasons, the court will grant defendants' motion for summary judgment.  An appropriate order will issue.

       /S/ CHRISTOPHER C. CONNER
Christopher C. Conner, Chief Judge
United States District Court
Middle District of Pennsylvania

Dated:     February 26, 2015

---

[7] Obviously, for the reasons stated, there is no basis for Dr. Thompson's punitive damages claim against Armbruster.  This claim is also subject to dismissal as a matter of law.